UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ALVA LESLIE FUNK, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | CAUSE NO. 3:06-CV-234 RM |
| vs. | ) | |
| | ) | |
| CECIL DAVIS, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

OPINION AND ORDER

Alva Leslie Funk, a *pro se* prisoner, submitted a complaint under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. PRO. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). Weiss v. Cooley, 230 F.3d 1027, 1029 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.
>
> In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim

showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

Mr. Funk alleges that another inmate attacked him in his cell.

> 17. On May 29, 2004, at around 7:00 A.M. line movement, in A-Cellhouse, an inmate stabbed another inmate – with a home made knife – on the 400 range and then chased that inmate around the cellhouse trying to stab him again, but he could not catch him. The inmate with the knife then came to the plaintiff's cell on the 200 range.
> 18. Plaintiff was just getting out of bed, when this inmate jerked his cell door open and ran in and immediately stabbed plaintiff twice in the chest, he continued stabbing plaintiff 23 time, in the face, neck, shoulder, arms and hands. The assault lasted around 15 seconds. The assailant then backed out of the plaintiff's cell and was confronted by Sergeant Boyan – who was responding to this emergency – and Boyan ordered the inmate to drop the knife; he complied with the order and dropped the knife.

Complaint at ¶¶ 7-8. Mr. Funk was then taken for medical treatment.

Mr. Funk alleges that his attack was a result of the enforcement of a rule change that prevented him from locking himself in his cell with his own personal padlock and chain. He alleges that before the rule change, he regularly locked himself in his cell and that had he been permitted to do so on the morning of May 29th, that his assailant could not have entered his cell. After he was attacked, he alleges that the policy was reversed and inmates once again were permitted to possess locks and chains with which they could lock themselves into their cells. Mr. Funk explains that he was told, "that allowing offenders to

secure themselves in their cell with their personal locks was a violation of the State Fire Code." Complaint at ¶10. When the policy was rescinded in September 2004, less than a year after its implementation, Mr. Funk explains that he was told "that a deal had been worked out and a set of bolt cutters would be kept in the cellhouses and that would allow inmates to secure themselves in their cells."

To prevail on his claim, Mr. Funk asks this court to find that the change in prison policy was deliberately indifferent to his safety.

> Federal judges must always be circumspect in imposing their ideas about civilized and effective prison administration on state prison officials. The Constitution does not speak with precision to the issue of prison conditions (that is an understatement); federal judges know little about the management of prisons; managerial judgments generally are the province of other branches of government than the judicial; and it is unseemly for federal courts to tell a state how to run its prison system.

Scarver v. Litscher, 434 F.3d 972, 976-977 (7th Cir. 2006) (quotation marks and ellipsis omitted).

> Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.

Whitley v. Albers, 475 U.S. 312, 321–322 (1986) (citations, ellipsis, and quotation marks omitted). It is not "for the limited competence of federal judges to micromanage prisons." Bruscino v. Carlson, 854 F.2d 162, 165 (7th Cir. 1988).

In addition to the fire safety risk mentioned by Mr. Funk, a cursory review of litigated prison conditions demonstrates that many contradictory factors are involved in deciding whether to permit inmates to possess and use personal locks. Though personal locks could permit an inmate to secure himself from attack, such a lock could also permit an attacker to trap a victim in a cell with him. *Compare* Hart v. Sheahan, 396 F.3d 887, 893-894 (7th Cir. 2005) (inmate attacked by cellmate while locked in their cell together). Such a lock could itself be used as a weapon. *See* Pierson v. Hartley, 391 F.3d 898, 900 (7th Cir. 2004) ("Wilkinson beat Pierson with brass locks stuffed in a sock . . ..") . In addition, being locked in a cell would not protect an inmate from having things thrown at him by an attacker. *Compare* United States v. Haynes, 143 F.3d 1089 (7th Cir. 1998) ("poured scalding oil on his head."), and Benner v. McAdory, 34 Fed. Appx. 483, 485 (7th Cir. 2002) (scalding water thrown at others).

Prison administrators must weigh many risks when fashioning prison policies. Clearly bad things can (and at times will) happen if inmates are not permitted to lock themselves in their cells with personal locks, but so too bad things can (and also certainly will) happen if they are permitted to do so. In making such a decision, the question is not how to achieve a perfectly safe environment — that is impossible — but rather how best to secure and protect the facility, its inmates and guards.

4

> Prisons are dangerous places. Housing the most aggressive among us, they place violent people in close quarters. Those who have difficulty conforming to society's norms outside prison may find obedience no more attractive inside -- and the threat of punishment for violence is diminished for one already serving a long term.

McGill v. Duckworth, 944 F.2d 344, 345 (7th Cir. 1991).

> Some level of brutality and sexual aggression among [prisoners] is inevitable no matter what the guards do. Worse: because violence is inevitable unless all prisoners are locked in their cells 24 hours a day and sedated (a "solution" posing constitutional problems of its own) it will always be possible to say that the guards "should have known" of the risk. Indeed they should, and do. Applied to a prison, the objective "should have known"" formula of tort law approaches absolute liability, rather a long distance from the Supreme Court's standards in Estelle and its offspring.

McGill v. Duckworth, 944 F.2d 344, 348 (7th Cir. 1991).

Deliberate indifference is a very high standard. Liability under § 1983 attaches only where a defendant acts with "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). Liability does not attach if the defendants are merely negligent, incompetent, unreasonable, or committing medical malpractice. *See* Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004), Gibbs v. Franklin, 49 F.3d 1206, 1208 (7th Cir. 1995), and Walker v. Peters, 233 F.3d 494 (7th Cir. 2000). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." McGill v. Duckworth , 944 F.2d 344, 347 (7th Cir. 1991).

It might have been better for the defendants to have never changed the original policy. Or it might have been better for the defendants to have purchased bolt cutters

5

sooner. Such issues lie beyond the court's expertise. Perhaps the defendants were negligent, incompetent, or unreasonable in how they assessed the potential risks involved in this decision. Nevertheless, liability does not attach where a defendant merely makes a decision in error without wanting harm to come to a prisoner as a result. The facts alleged in this complaint do not support the allegation of deliberate indifference in conjunction with the creation or enforcement of the anti-lock policy.

Neither is there any indication that the defendants were deliberately indifferent to the random attack upon Mr. Funk. Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations and internal punctuation omitted). When one inmate attacks another, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen . . . ." Haley v. Gross, 86 F.3d 630, 640 (7th Cir. 1996). But the right to reasonable protection does not include the right to protection from random acts of violence. *See* McGill v. Duckworth, 944 F.2d 344, 348 (7th Cir. 1991). Mr. Funk's attacker targeted an inmate on another range and chased him around the cellhouse before entering Mr. Funk's cell and stabbing him. Mr. Funk does not indicate, and based on this complaint it would not be reasonable to infer, that he had any forewarning of the attack or that he alerted any of the defendants that he was in fear of the attacker. Though the attack was regrettable, the facts alleged here do not support an allegation of deliberate indifference.

For the foregoing reasons, this case is DISMISSED pursuant to 28 U.S.C. §1915A.

SO ORDERED.

ENTERED: December  5 , 2006

                                            /s/ Robert L. Miller, Jr.
                                            Chief Judge
                                            United States District Court